(24 Misc. Rep. 561.)

### In re WOOD et al.[1]

(Supreme Court, Special Term, Queens County. September, 1898.)

1. MUNICIPAL CORPORATIONS—CANCELLATION OF ASSESSMENTS.
    In proceedings under Laws 1886, c. 656, § 10, providing for cancellation of assessments levied by Long Island City for irregularities apparent on the face of the levy, a denial on information and belief of petitioner's interest in the lands assessed is insufficient.

2. SAME—VALIDITY OF LEVY.
    Under Long Island City Charter, § 6 (Laws 1871, c. 461, as amended by Laws 1881, c. 319, and Laws 1889, c. 548), requiring the assessors to enter lands for taxation in alphabetical order of the names of the owners, and Laws 1896, c. 908, §§ 21, 29, requiring the assessment roll of a subdivided tract to contain the number of each lot, and the quantity of land therein, a levy of municipal taxes which fails to give the quantity of land contained in the lots assessed is invalid on its face, even where the recorded field maps of the town plat show their dimensions.

3. INVALID TAX—VOLUNTARY PAYMENT.
    An invalid tax is not validated by the levy and voluntary payment of a similarly invalid tax on the same property for a number of years prior thereto.

[1] Reversed on appeal. See 54 N. Y. Supp. 978.

**4. SAME.**

> Voluntary payment of an invalid tax, levied on the same property for a number of years, does not estop the taxpayer from questioning the validity of a subsequent similarly invalid tax.

Application by Dennistoun Wood and another, as executors, to compel the cancellation of taxes on certain real property in the borough of Queens, formerly Long Island City. Granted.

George W. Stephens, for petitioners.

John Whalen, Corp. Counsel, James W. Covert, Asst. Corp. Counsel, for respondents.

GARRETSON, J. The petitioners, as executors, etc., of William Wood, deceased, are the owners and holders of mortgages upon certain real property in that part of the borough of Queens, in the city of New York, formerly constituting the municipality known as "Long Island City." They allege an interest as such mortgagees in such real property, within the meaning of the statute next hereinafter referred to. For the purposes of this proceeding the allegation must be deemed to be established, opposed as it is by a denial made upon information and belief. The proceeding, while not entirely analogous to, is in the nature of, an application for a writ of mandamus, upon which, under well-settled rules, such a denial does not raise an issue of fact. It is sought, in this summary way, to bring in question the assessment and levy of taxes for ward and city purposes for the year 1896, made by the assessors and common council of Long Island City, to the end that this court shall by order direct that such taxes upon the mortgaged premises be canceled by virtue of the provisions of section 10 of chapter 656 of the Laws of 1886, for alleged invalidity and irregularity, which appear upon the face of the proceedings. The procedure is special, unusual, and peculiar to Long Island City, and the enactment seems unaffected by subsequent legislation, and no question is made hereon of the petitioners' right to avail themselves of the remedy therein provided, nor of the power of the court to grant the relief sought. Title 6 of the Revised Charter of Long Island City, being chapter 461 of the Laws of 1871, as amended by chapter 319 of the Laws of 1881 and chapter 548 of the Laws of 1889, prescribes the method of procedure in the assessment and levying of taxes, and the same was in force at the time of the performance of the official acts which are the subject of complaint and criticism. Section 6 thereof provides that:

> "In preparing said assessment-rolls and in reviewing the same, the said assessors shall have all of the powers of assessors of towns in this state, except as herein otherwise provided, and except that lands of nonresidents shall not be separated from the other assessments, and that the assessed valuation of all personal property shall be entered by said assessors in separate books or rolls in alphabetical order, of the names of persons and corporations subject to taxation. No tax or assessment thereof shall be void in consequence of the name of the owner or owners, occupant or occupants, of any real estate in said city not being inserted in the assessment-rolls or lists; but in such case no tax shall be collected except from the real estate so assessed."

By the Revised Statutes (2 Rev. St. [8th Ed.] pp. 1096, 1097, §§ 9, 12, in force until June 15, 1896), and by the Tax Law (Laws 1896,

c. 908, §§ 21, 29, in force on and after the date last mentioned), it is provided that assessors shall set down in separate columns, in assessing taxable inhabitants of the town or ward (or tax district), (1) the name of each inhabitant, (2) the quantity of land taxable to him, and (3) the full value of such land; and, in assessing lands of non-residents, (1) a description of the land by boundaries or otherwise, and, if a subdivided tract, the name of such tract, and the numbers of all unoccupied lots thereof; (2) in the second column, and opposite the number of each lot, the quantity of land therein; (3) in the third column, and opposite the quantity; the full value thereof. The sections of the charter and the provisions of the general laws above cited, when construed together, as they must be, practically abrogate the distinction between the manner of assessment of real property of resident and nonresident owners, for they direct that all assessments of real property shall be entered in the same list, and declare that no tax or assessment shall be void in consequence of the name of the owner or owners, occupant or occupants, not being inserted in the assessment roll. Whether the real property be owned by a resident or a nonresident, it is assessed and taxed as such, and the tax is a lien thereon. Collins v. Long Island City (Sup.) 10 N. Y. Supp. 167, affirmed 132 N. Y. 321, 30 N. E. 835. A resident owner may, however, be assessed for real property by name, in which case the tax is also a personal charge, enforceable by levy and sale of his goods and chattels. But in every instance, whether the assessment be in form to the name of a resident owner or of the real property itself, and whether owned by a resident or a nonresident, the statute requires that the quantity of the land shall be entered in the second column of the assessment roll.

It appears from the petition, and is not controverted, that as to the several lots of land which are the subject of the assessment in question, in no instance is the quantity of land placed in the assessment roll; the form of each entry upon the roll being as follows (the name of the owner where it occurs being herein omitted as immaterial to the question involved):

| Block. | Lot. | Assessed Valuation. Real Estate. | | Amount of Taxes Levied. | | | |
|--------|------|-------------|--------|-----------|--------|-----------|--------|
| | | Dollars. | Cents. | City Tax. | | Ward Tax. | |
| | | | | Dollars. | Cents. | Dollars. | Cents. |
| 125 | 10 | 300 | | $3 | 72 | $0 | 87 |

The block and lot numbers are those shown upon the field maps, which have been in use in Long Island City for many years for the purpose of assessment and taxation; and, while these maps may not have been prepared by authority of law, as is claimed by counsel for the petitioners, yet they may be regarded as designations of subdivided tracts, within the meaning of the statute, and should not now be discredited. They conform to the official plan of the city, made under the authority of chapter 765 of the Laws of 1871, by which the lines of the streets, avenues, public squares, and parks of the city

were established, although it is conceded that the latter does not show subdivisions of blocks into lots or parcels. It is a well-settled rule of law that the statute under the authority of which an assessment for taxation is made must be complied with in every substantial particular. Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391; Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932; People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891; Stewart v. Crysler, 100 N. Y. 378, 3 N. E. 471; In re Application of New York Cent. & H. R. R. Co., 90 N. Y. 342; Weeks v. Waldron, 64 N. H. 149, 5 Atl. 660. As was said by O'Brien, J., in Sanders v. Downs, supra, after declaring the rule above stated:

"The only warrant for the imposition of a tax or burden upon the citizen or his property without his consent must be found in some positive law, and it cannot be enforced unless imposed in the manner pointed out by the statute. The duties and powers of assessors in making up the assessment roll of the town, which is to be the basis of taxation, are clearly pointed out by statute, and must be followed. * * * Any construction of the statute which would in any degree encourage erroneous, lax, or careless methods of making up the assessment roll would disturb the security with which the law guards private rights, and at the same time prove detrimental to public interests. If it was possible by any fine distinction to take this case out of the general rule applicable to assessments of this character, it would not be desirable to weaken or qualify by any such exception the safeguards which the legislature and the courts have erected against the invasion of property rights otherwise than in strict compliance with law."

In the case at bar we find that the assessors have omitted to place in the assessment roll the quantity of land opposite the number of each lot, and there is nothing to be gathered therefrom by way of dimensions or description which may be regarded as a substantial equivalent therefor. This omission by the assessors to follow a positive requirement of the statute, one as essential to constitute a valid assessment as either of the other specifications of duty on their part, renders the assessment invalid, and the tax nonenforceable against either the owner or the real property, upon the principles enunciated and applied in the cases above cited.

It is alleged in the answering affidavit that the field or assessment maps have thereon the dimensions of each and every lot in Long Island City, including the property mentioned in the petition, and that these were matters in each instance of general and public knowledge. But the field maps are not part of the assessment roll, and, while they may be availed of for information, the taxpayer inquiring as to the assessment of his own land, and perhaps of others for the purpose of comparison, is not bound to look elsewhere for that which the law requires shall be placed upon the face of the assessment roll itself.

It is also urged by the respondents that the assessment of these lands has been similarly made, and the tax paid thereon for a number of years prior to 1896. If, from this, it is intended to be argued that thereby the assessors of Long Island City had succeeded in nullifying a positive legislative requirement and in making a law unto themselves, we are constrained to reject the proposition as not founded upon principle or authority. Neither do we consider that the payment of a tax levied upon an invalid assessment in each of

several prior years has estopped a party in interest from questioning the validity of an assessment for the year 1896. The conclusion reached from the foregoing makes it unnecessary to consider the other questions, some of which also tend to warrant the granting of the order asked for. The motion that the assessment and tax be canceled for invalidity and irregularity which appear upon the face of the proceedings, and particularly upon the face of the assessment roll, is granted, with costs.

Motion granted, with costs.